**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION, SPRINGFIELD**

IN RE:

Bradley E. Phillips
Lauren D. Phillips

Hon. Judge Arthur B. Federman

Case No. 17-60291-abf13

Debtor(s)

Chapter 13

---

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

---

**NOW COMES**, FRANKLIN AMERICAN MORTGAGE COMPANY (hereinafter "Creditor"), by and through its attorneys, CODILIS, MOODY & CIRCELLI, P.C. and moves this Honorable Court pursuant to 11 U.S.C. §362(d) for an Order granting Creditor relief from the automatic stay and in support thereof respectfully represents as follows:

1.      This Court has jurisdiction pursuant to 28 U.S.C. §1334 and venue is fixed in this Court pursuant to 28 U.S.C. §1409;

2.      Debtor(s) filed a petition under Chapter 13 of Title 11, United States Bankruptcy Code on 3/23/17;

3.      Creditor is a secured deed of trust holder or servicer on the property commonly known as 3117 South Chambery Avenue, Springfield, Missouri 65804-4505;

4.      Enforcement of this security interest has been stayed automatically by operation of 11 U.S.C. §362 of the Bankruptcy Code;

5.      The principal and interest due and owing as of the date debtor(s) filed this Chapter 13 petition was approximately $236,493.92.

6. Creditor is entitled to relief from the automatic stay under 11 U.S.C. §362(d) for the following reasons:

    a) According to the chapter 13 plan, the aforementioned property known as 3117 South Chambery Avenue, Springfield, Missouri 65804-4505 is to be surrendered;

    b) As of 07/06/2017, the loan is past due for the 2/1/17 payment, and all amounts coming due since that date. Any payments received after this date may not be reflected in the default;

    c) As of 07/06/2017, the total default through and including 7/1/17 is $11,707.51. The default consists of 2 pre-petition payments (1 @ $1,797.16; 1 @ $1,775.87), and 4 post-petition payments in the amount of $1,775.87 each. Any payments received after this date may not be reflected in this default. This amount also includes post-petition attorney fees in the amount of $1,031.00;

    d) On 08/01/2017, the default will increase to $13,484.38 and will continue to increase as additional amounts become due;

7. Movant has incurred attorney fees and/or costs in connection with this bankruptcy proceeding which have been included in the calculation of any default figures quoted herein subject to court approval, including:

    $850.00    for Preparation of Notice and Motion for Relief from the Automatic Stay, and prosecution of same

    $181.00    for Court filing fee

8. The Court has authority to order that Rule 4001(a)(3) is not applicable to the order entered in granting this motion, and Creditor requests this Court so order;

**WHEREFORE** FRANKLIN AMERICAN MORTGAGE COMPANY prays this Court enter an Order pursuant to 11 U.S.C. §362(d) modifying the automatic stay as to the property securing its interest, waiving the fourteen (14) day stay pursuant to Rule 4001(a)(3), approving its post-petition fees and costs incurred, and for such other and further relief as this Court may deem just and proper.

Dated July 17, 2017

Respectfully Submitted,

CODILIS, MOODY & CIRCELLI, P.C.

By: /s/ MaryAnn Kier

Joseph J. Circelli #58421MO
Rachael A. Stokas #61282MO
Matthew M. Moses #62330MO
MaryAnn Kier #59899MO
Joe.circelli@mo.cslegal.com
Rachael.stokas@il.cslegal.com
Matt.moses@il.cslegal.com
Maryann.kier@mo.cslegal.com
**CODILIS, MOODY & CIRCELLI, P.C.**
15W030 North Frontage Road, Suite 200
Burr Ridge, IL 60527
(630) 794-5200- Phone
(630) 794-5277- Fax
**CMC File No. 26-17-00806**

NOTE: This law firm is a debt collector.

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION, SPRINGFIELD

**IN RE:**

|  |  |
|---|---|
| Bradley E. Phillips | Hon. Judge Arthur B. Federman |
| Lauren D. Phillips | Case No. 17-60291-abf13 |
| Debtor(s) | Chapter 13 |

### CERTIFICATE OF SERVICE

      The undersigned, an attorney, hereby certify that I served the attached Motion for Relief from the Automatic Stay upon the parties listed below via electronic notice and/or U.S. First Class Mail, postage prepaid, from 7140 Monroe Street, Willowbrook, IL 60527 before the hour of 5:00 PM on July 17, 2017.

Bradley E. Phillips Lauren D. Phillips Debtor(s), 3117 S. Chambery Ave., Springfield, MO 65804
Marc D. Licata, Attorney for Debtors, 1442 E. Bradford Pkwy., Springfield, MO 65804
Richard Fink, 2345 Grand Blvd, Suite 1200, Kansas City, MO 64108-2663
Office of U.S. Trustee, 400 E. 9th Street #3440 Kansas City, MO 64106

     /s/ MaryAnn Kier
     Attorney for Creditor

     Joseph J. Circelli #58421MO
     Rachael A. Stokas #61282MO
     Matthew M. Moses  #62330MO
     MaryAnn Kier #59899MO
     Joe.circelli@mo.cslegal.com
     Rachael.stokas@il.cslegal.com
     Matt.moses@il.cslegal.com
     Maryann.kier@mo.cslegal.com
     **CODILIS, MOODY & CIRCELLI, P.C.**
     15W030 North Frontage Road, Suite 200
     Burr Ridge, IL 60527
     (630) 794-5200-Phone
     (630) 794-5277- Fax
     **CMC FILE NO. 26-17-00806**

NOTE: This law firm is a debt collector.

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION, SPRINGFIELD**

**IN RE:**

Bradley E. Phillips
Lauren D. Phillips

Debtor(s)

Hon. Judge Arthur B. Federman

Case No. 17-60291-abf13

Chapter 13

**SUMMARY OF EXHIBITS AND CERTIFICATE OF SERVICE**

The following exhibit(s) in reference to creditor's Motion for Relief from the automatic Stay are summarized below:

1. Recorded Deed of Trust
2. Note
3. Assignment(s)

/s/ MaryAnn Kier
MaryAnn Kier #59899

Joseph J. Circelli #58421MO
Rachael Stokas #61282MO
Matthew M. Moses #62330MO
**CODILIS, MOODY & CIRCELLI, P.C.**
15W030 North Frontage Road, Suite 200
Burr Ridge, IL 60527
(630) 794-5200

NOTE: This law firm is a debt collector.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of all documents supporting my motion referenced above, including legible copies (short form pursuant to local rule 4001-1(F)) of all documents evidencing perfection of security interests have been served upon the parties listed below via electronic notice or first class U.S. mail in a properly addressed envelope, postage prepaid, from 7140 Monroe Street, Willowbrook, IL 60527 before the hour of 5:00 PM July 17, 2017. Complete copies of the above documents are available to parties in interest upon request.

Bradley E. Phillips Lauren D. Phillips Debtor(s), 3117 S. Chambery Ave., Springfield, MO 65804
Marc D. Licata, Attorney for Debtors, 1442 E. Bradford Pkwy., Springfield, MO 65804
Richard Fink, 2345 Grand Blvd, Suite 1200, Kansas City, MO 64108-2663
Office of U.S. Trustee, 400 E. 9th Street #3440 Kansas City, MO 64106

/s/ MaryAnn Kier

**POST-PETITION LOAN HISTORY**
**17-60291-abf13**

No payments received from Debtor.

Please note that recent payments applied may not have cleared.
Please note that payments received from the trustee for pre-petition arrearages are not included.

NOTE: This law firm is a debt collector.

*PERSONAL INFORMATION REDACTED*

# NOTE

MIN: ▮▮▮▮▮▮▮▮▮▮▮▮                    Loan Number: ▮▮▮▮▮▮▮▮▮▮▮▮

FHA Case No. ▮▮▮▮▮▮▮▮▮▮▮

APRIL 3, 2015                    SPRINGFIELD                    MISSOURI
[Date]                          [City]                        [State]

3117 SOUTH CHAMBERY AVENUE, SPRINGFIELD, MISSOURI 65804-4505
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 241,544.00         (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is FRANKLIN AMERICAN MORTGAGE COMPANY, A TENNESSEE CORPORATION                                    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          4.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on JUNE 1        ,
2015       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on MAY 1, 2045                  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 501 CORPORATE CENTRE DRIVE, SUITE 400, FRANKLIN, TENNESSEE 37067

                                          or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,153.17            .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE 01/21/15                    Page 1 of 4                    DocMagic *eForms*
                                                                    www.docmagic.com

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED ** See attached Late Fee

**(A) Late Charge for Overdue Payments** Addendum to Promissory Note

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE FHA FIXED RATE NOTE
USFHANTE 01/21/15 Page 2 of 4 *DocMagic eFormns*
*www.docmagic.com*



## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  01/21/15                         Page 3 of 4                         DocMagic eForms
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)          _____ (Seal)
BRADLEY PHILLIPS        -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                  -Borrower


                                                      *[Sign Original Only]*

Loan Originator: ████████████████████
Loan Originator Organization: ████████████████████████████████

PAY TO THE ORDER OF:
 WITHOUT RECOURSE

FRANKLIN AMERICAN MORTGAGE COMPANY, A TENNESSEE CORPORATION

BY: _Bernita J. Hill, SR.V.P._

ITS: **Bernita J. Hill, Sr. V. P.**


MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  01/21/15                    Page 4 of 4                    *DocMagic eForms*
                                                                     www.docmagic.com

PERSONAL INFORMATION REDACTED

*Electronically Recorded*

012321-15 08 Apr 2015 12:54:21 PM

Book: **2015**
Page: **012321-15**
**9 pages**

REAL ESTATE DOCUMENT
GREENE COUNTY, MISSOURI
RECORDERS CERTIFICATION

*Cheryl L. Dawson*
Cheryl L. Dawson
Recorder of Deeds

lcunningham

After Recording Return To:  FRANKLIN AMERICAN MORTGAGE COMPANY
501 CORPORATE CENTRE DRIVE, SUITE 400
FRANKLIN, TENNESSEE 37067
Loan Number:

——————————— [Space Above This Line For Recording Data] ———————————

CONTINENTAL TITLE

# DEED OF TRUST

| FHA CASE NO. |
| --- |
| |

**MIN:**

**MERS Phone: 888-679-6377**

THIS DEED OF TRUST ("Security Instrument") is made on   APRIL 3, 2015
The grantor is  BRADLEY  PHILLIPS AND LAUREN  PHILLIPS, HUSBAND AND
WIFE
("Borrower").

The trustee is   L&GST CORPORATION
2345 GRAND  BLVD, STE 2800 KANSAS CITY MO  64108       ("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns).  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
FRANKLIN AMERICAN MORTGAGE COMPANY    "*Grantee*"
("Lender")

is organized and existing under the laws of  THE STATE OF TENNESSEE              ,
and has an address of  501 CORPORATE CENTRE DRIVE, SUITE 400, FRANKLIN,
TENNESSEE 37067
Borrower owes Lender the principal sum of  TWO HUNDRED FORTY-ONE THOUSAND FIVE
HUNDRED FORTY-FOUR AND 00/100        Dollars (U.S. $ 241,544.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  MAY 1, 2045
This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;  (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument;  and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably
Legal description of the property is set forth on page     2           of this Security Instrument.

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA 06/12/14                    Page 1 of 9                    DocMagic *eForms*
www.docmagic.com

grants and conveys to Trustee, in trust, with power of sale, the following described property located in
GREENE                                    County, Missouri:
ALL OF LOT FIFTEEN (15) IN CHIMNEY HILLS FIRST ADDITION, IN THE
CITY OF SPRINGFIELD, GREENE COUNTY, MISSOURI, ACCORDING TO THE
RECORDED PLAT THEREOF.
A.P.N.: 881905401048

which has the address of                    3117 SOUTH CHAMBERY AVENUE
                                                        [Street]
        SPRINGFIELD              , Missouri       65804-4505      ("Property Address"):
        [City]                                     [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling
this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
    **1.   Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
    **2.   Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items
are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the
maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures
Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 12 C.F.R. Part 1024, as they may be amended
from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements
or disbursements before the Borrower's payments are available in the account may not be based on amounts due for
the mortgage insurance premium.

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA  06/12/14                      Page 2 of 9                    DocMagic eForms
                                                                       www.docmagic.com

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA  06/12/14                     Page 3 of 9                     *DocMagic eForms*
*www.docmagic.com*

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7.   Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8.   Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9.   Grounds for Acceleration of Debt.**

        **(a)   Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b)   Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

            (ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

        **(c)   No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA  06/12/14        Page 4 of 9        *DocMagic eForms*
*www.docmagic.com*

(d)  **Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  **Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60  DAYS   from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to   60  DAYS                            from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.  Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.  Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument;  and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.  Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA  06/12/14                                    Page 5 of 9                                    *DocMagic eForms*
www.docmagic.com

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall mail copies of notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA 06/12/14                                  Page 6 of 9                                  *DocMagic eForms*
www.docmagic.com



If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider          ☐ Graduated Payment Rider     ☐ Growing Equity Rider
☐ Planned Unit Development Rider  ☐ Adjustable Rate Rider      ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider   ☐ Other [Specify]

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA  06/12/14                    Page 7 of 9                    DocMagic *eForms*
www.docmagic.com

**ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE.  TO PROTECT YOU (BORROWERS(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
BRADLEY PHILLIPS                -Borrower

_____ (Seal)
LAUREN PHILLIPS                -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Witness:                                        Witness:

_____            _____

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA  06/12/14                      Page 8 of 9                      DocMagic *eForms*
                                                                          www.docmagic.com

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of MISSOURI

County (and/or city) of Greene

On this 3rd day of April 2015 , before me personally appeared

BRADLEY PHILLIPS AND LAUREN PHILLIPS

Husband and wife

——————————————————————————————————————— ,

to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged

that he/she/they executed the same as his/her/their free act and deed.

ANNETTE WARNER
Notary Public – Notary Seal
STATE OF MISSOURI
Greene County
My Commission Expires Feb. 9, 2016
Commission #11541405

_____
                    Notary Public

Annette Warner
_____
                    Typed or Printed Name

(Seal)                              My commission expires: 2-9-16

Loan Originator: ████████████
Loan Originator Organization: ████████████

FHA MISSOURI DEED OF TRUST - MERS
MODOTZ.FHA 06/12/14                  Page 9 of 9

DocMagic *EForms*
www.docmagic.com

*Electronically Recorded*

**017324-17 03 May 2017 10:06:40 AM**

Book: **2017**
Page: **017324-17**
**3 pages**

REAL ESTATE DOCUMENT
GREENE COUNTY, MISSOURI
RECORDERS CERTIFICATION

*Cheryl Dawson-Spaulding*
**Cheryl Dawson-Spaulding**
Recorder of Deeds

lcunningham

---

Title of document:                 Assignment of Deed of Trust

Date of document:                 4/28/17

Grantor(s):                             Mortgage Electronic Registration Systems, Inc. as Nominee for Franklin
                                              American Mortgage Company

Grantor(s)' address:              P.O. Box 77408/FC-236 425 Phillip Boulevard, Ewing, NJ 08618

Grantee(s):                            Franklin American Mortgage Company

Grantee(s)' address:              6100 Tower Circle Suite 600  Franklin, TN 37067

Full legal description located on page(s):     ALL OF LOT FIFTEEN (15) IN CHIMNEY HILLS FIRST
ADDITION, IN THE CITY OF SPRINGFIELD, GREENE COUNTY, MISSOURI, ACCORDING TO THE
RECORDED PLAT THEREOF.

Reference Book/Page, if required:   Book 2015 Page 012321-15

MERS Phone Number: 1-888-679-6377
MIN Number ███████████

---------------------------------------------------------------------

**Above space for Recorder's Use Only**
## ASSIGNMENT OF DEED OF TRUST

KNOW ALL MEN BY THESE PRESENTS, that Mortgage Electronic Registration Systems, Inc. as Nominee for Franklin American Mortgage Company, its successors and assigns a Corporation organized and existing under and by virtue of the laws of the State of Delaware, for good and valuable consideration the receipt whereof is hereby acknowledged, granted, assigned and transferred to **Franklin American Mortgage Company**, all interests in and under that certain Deed of Trust and all rights accrued or to accrue under said Deed of Trust dated 4/3/2015 executed by **Bradley Phillips and Lauren Phillips, husband and wife,** Grantor(s), to **Mortgage Electronic Registration Systems, Inc. as Nominee for Franklin American Mortgage Company,** its successors and assigns.  Said Deed of Trust was recorded/registered with the recorder/registrar for Greene County, Missouri on 4/8/2015 as Book Number 2015 Page 012321-15 and which Deed of Trust covers the following described property, to-wit:   ( See Exhibit "A")

**Commonly known as**:          3117 S. Chambery Avenue, Springfield, MO 65804-4505
**PIN: 881905401048**

IN WITNESS WHEREOF, said party of the first part has caused this instrument to be signed by its  ASST VICE PRESIDENT
this _𝓧_ day of _April_____ , 20 _17_.

Mortgage Electronic Registration Systems, Inc. as Nominee for Franklin American Mortgage Company, its successors and assigns

By: _____          KIM A. HAGEN
          Signature & Title                            _____
                                            Print Name
                                            ASSISTANT VICE PRESIDENT

STATE OF __NEW JERSEY                          SS
COUNTY OF MERCER_____

I, _Nicole Shovlin_, the undersigned Notary Public, do hereby certify that KIM A. HAGEN_____ (name of person), ASST VICE PRESIDENT_____ (title of person)  is personally known to me to be the Authorized Signatory of the corporation that executed the within and foregoing instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he was authorized to execute said instrument.

GIVEN under my hand and Seal this _28_ day of _April_ , 20 _17_

_____
Notary Public                     SEAL

*(Notary seal: NICOLE E. SHOVLIN, My Commission Expires 12/06/2021, NOTARY PUBLIC, STATE OF NEW JERSEY, ID #50050466)*

Page 1 of 2

███████████████████

# EXHIBIT A

ALL OF LOT FIFTEEN (15) IN CHIMNEY HILLS FIRST ADDITION, IN THE CITY OF SPRINGFIELD, GREENE COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF.